**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

NEW WOOD RESOURCES LLC,            )
                                   )
              Plaintiff,           ) C.A. No. N20C-10-231 AML CCLD
                                   )
       v.                          )
                                   )
RICHARD BALDWIN,                   )
                                   )
              Defendant.           )

Submitted: May 26, 2021
Decided: August 23, 2021

**Upon Plaintiff's Motion for Judgment on the Pleadings – GRANTED**

**ORDER**

The defendant in this case served as a manager of the plaintiff limited liability company from 2013 until his resignation in 2016. While he was a manager, some of the company's members sued the defendant for, among other things, breach of contract, breach of fiduciary duty, and negligence. To cover the costs of defending this suit, the defendant sought advancement and indemnification from the plaintiff company. After the plaintiff refused to advance the defendant's attorneys' fees and costs, the defendant filed an action in the Delaware Court of Chancery to enforce his advancement rights. In connection with that advancement action, the defendant signed a written undertaking promising to repay the advanced funds if it was later determined he was not entitled to indemnification under the plaintiff's governing agreement. The Court of Chancery ultimately determined the defendant was entitled

1

to advancement for the costs of defending the underlying lawsuit, and the plaintiff paid the amount ordered by the court. Thereafter, through the process prescribed in the LLC agreement, a majority of the plaintiff company's unitholders determined the defendant's conduct in the underlying lawsuit did not meet the contractually specified standard for indemnification.

The plaintiff then sought to claw back its payments, citing the defendant's written undertaking to repay. To that end, the plaintiff filed a breach of contract claim in this Court, alleging the defendant breached the LLC agreement and written undertaking by refusing to reimburse the advancement funds. The defendant counterclaimed, alleging the plaintiff breached the implied covenant of good faith and fair dealing by acting in bad faith when it determined he was not entitled to indemnification. The defendant later orally argued that this Court should imply a term into the LLC agreement requiring any indemnification decision to be made in good faith. The plaintiff now moves for judgment on the pleadings as to both its breach of contract claim and the defendant's counterclaim. Because (i) the LLC agreement and the defendant's undertaking unambiguously require the defendant to repay the advancement funds, (ii) the plaintiff did not make the indemnification determination, and (iii) the determination was made in accordance with the LLC agreement's express terms, the plaintiff's motion for judgment on the pleadings is granted.

2

## FACTUAL & PROCEDURAL BACKGROUND

1.       Plaintiff/Counterclaim Defendant New Wood Resources LLC ("New Wood") is a Delaware limited liability company that operates a plywood and veneer manufacturing facility in Mississippi known as Winston Plywood & Veneer LLC ("WPV").[1] Defendant/Counterclaim Plaintiff Richard F. Baldwin served as one of New Wood's managers from 2013 until his resignation in 2016.[2] New Wood's Second Amended and Restated Limited Liability Company Agreement (the "LLC Agreement") provides New Wood's managers with certain indemnification and advancement rights. Section 8.2 of the LLC Agreement states, in pertinent part:

> Notwithstanding anything to the contrary in this Section 8.2, no Person shall be entitled to indemnification hereunder unless it is found (in the manner described below in this Section 8.2) that, with respect to the matter for which such Person seeks indemnification, such Person acted in good faith and in a manner that he or she reasonably believed to be in or not opposed to the best interests of the Company . . . .[3]

Section 8.2 goes on to establish the process for determining that a manager acted with the requisite good faith and in the company's best interests:

> The finding of the standard of conduct required above shall be made (a) by a majority vote of all of the Managers who are not parties to such Proceeding even though less than a quorum or (b) if there are no such Managers, or if such Managers so direct, by independent legal counsel in a written opinion or (c) *by holders of a Majority of the then-*

---

[1] Pl.'s Mot. at 2.
[2] *Id.*
[3] *Id.* at 4.

3

*outstanding Units* (determined without regard to any Members that are parties to such Proceeding).[4]

Further, Section 8.3 provides that a manager shall be advanced the costs of litigation "without any determination as to the Person's ultimate entitlement of indemnification."[5] Section 8.3 expressly conditions such right to advancement on the manager executing "a written undertaking . . . to repay all amounts so advanced if it shall ultimately be determined that such indemnified Person is not entitled to be indemnified."[6]

2. On February 9, 2018, a member of New Wood that Baldwin managed, Oak Creek Investments, LLC ("OCI"), filed a complaint in the United States District Court for the Northern District of Mississippi against New Wood, WPV, and other third parties, alleging breach of contract, fraud, and breach of fiduciary duty among other things.[7] On May 17, 2018, the defendants in the Mississippi federal action moved to dismiss for lack of subject matter jurisdiction and filed a lawsuit against OCI and Baldwin in the Delaware Court of Chancery (the "Delaware Plenary Action"). The Delaware Plenary Action asserted claims against OCI and Baldwin for, among other things, breach of fiduciary duty, breach of contract, and negligence.[8] On May 25, 2018, OCI dismissed the Mississippi federal action and

---

[4] *Id.* (emphasis added).
[5] *Id.* at 4-5.
[6] *Id.*
[7] *Id.* at 5.
[8] *Id.* at 6.

4

re-filed its claims in Mississippi state court (the "Mississippi State Court Action").[9] The Mississippi State Court Action ultimately was dismissed in favor of the Delaware Plenary Action. On March 27, 2020, the Court of Chancery granted judgment in OCI and Baldwin's favor in the Delaware Plenary Action.[10]

3. Beginning in 2018, Baldwin sought advancement under the LLC Agreement, but New Wood denied his advancement claim. Baldwin and OCI then filed a separate action in the Delaware Court of Chancery seeking advancement in connection with the lawsuits (the "Advancement Action").[11] As required under Section 8.3, Baldwin signed a written undertaking promising to repay advanced funds if it was later determined he was not entitled to indemnification.[12] On October 14, 2019, the Court of Chancery ruled that Baldwin and OCI were entitled to advancement and ordered New Wood to pay $269,881.61 in advancement, $17,726.97 in prejudgment interest, and $214,459.49 as indemnification or "fees on fees" for the fees and expenses incurred in enforcing Baldwin's advancement right.[13] The Court of Chancery later entered an order under Court of Chancery Rule 88 on August 26, 2020, ordering New Wood to pay an additional $223,373.70 in

---

[9] *Id.*
[10] *Id.* at 7.
[11] *Id.* at 6.
[12] *Id.* at 6-7.
[13] Def.'s Suppl. Br., Ex. A.; *Richard F. Baldwin and Oak Creek Investments, LLC v. New Wood Resources, LLC*, Case No. 2019-0019-JRS (Del. Ch. Oct. 14, 2019).

5

advancement, $30,682.71 in interest, and $111,086.55 in indemnification.[14] The total advancement amount ordered was $541,664.99, and the total indemnification ordered was $325,546.04. Neither party disputes these sums.[15]

4.      On April 23, 2020, in accordance with Section 8.2, a majority of New Wood's unitholders issued a written consent (the "Written Consent") that determined Baldwin failed to act in good faith and therefore was not entitled to indemnification for fees or expenses incurred in the Mississippi State Court Action and the Delaware Plenary Action.[16] Baldwin alleges this determination was made by New Wood's majority member, ACR Winston Preferred Holdings, LLC ("ACR"), acting on New Wood's behalf.[17] Citing the written undertaking and the LLC Agreement, New Wood requested that Baldwin repay the advanced amounts, and Baldwin refused.[18]

5.      On October 26, 2020, New Wood initiated this action, alleging Baldwin breached the LLC Agreement and written undertaking by failing to reimburse New Wood the advanced funds.[19] On January 20, 2021, Baldwin filed his Answer, including three affirmative defenses and a counterclaim (the "Counterclaim"). The

---

[14] *Id.*, Ex. B.; *Richard F. Baldwin and Oak Creek Investments, LLC v. New Wood Resources, LLC*, Case No. 2019-0019-JRS (Del. Ch. Aug. 26, 2020).
[15] Pl.'s Supp. Br. at 2; Def.'s Supp. Br. at 2.
[16] Pl.'s Mot. at 7.
[17] Def.'s Resp. at 12.
[18] Pl.'s Mot. at 7-8.
[19] Pl.'s Compl. at 8-9.

Counterclaim seeks a declaratory judgment that: (i) New Wood is required to pay the attorneys' fees and costs Baldwin incurred in domesticating the judgment in the Mississippi State Action, (ii) Section 8.2 of the LLC Agreement contains an implicit term that any determination of the right of indemnification must be made in good faith, and (iii) the Written Consent by ACR was entered into in a bad faith attempt to avoid New Wood's indemnification obligation under the LLC Agreement.[20] On March 16, 2021, New Wood filed this Motion for Judgment on the Pleadings as to its breach of contract claim and Baldwin's Counterclaim.

6. After briefing was complete, the Court heard oral argument. At the conclusion of the hearing, the Court asked the parties to supplement the record regarding the specific amounts New Wood paid as advancement and indemnification. The Court also asked the parties to provide any relevant authority relating to Baldwin's assertion during oral argument that his counterclaim was both an implied covenant claim and an independent claim seeking to imply a term in the LLC Agreement. The Court took the Motion under advisement after the parties submitted their supplemental briefing on May 26, 2021.

**PARTIES' CONTENTIONS**

7. New Wood asserts it is entitled to judgment on the pleadings because the pleadings demonstrate Baldwin breached a valid agreement and there are no

---

[20] Def.'s Answer at 26.

7

material facts in dispute.[21] New Wood argues Baldwin's Answer does not dispute the essential elements of New Woods' breach of contract claim.[22] New Wood also maintains judgment on the pleadings is warranted because Baldwin has not asserted a valid defense or counterclaim.[23] New Wood contends Baldwin's implied covenant counterclaim fails because Baldwin lacks any support for the allegation that the Written Consent was issued in bad faith.[24] Further, the LLC Agreement expressly dictates how the indemnification is made and therefore there is no contractual gap for the implied covenant to fill.[25] Finally, in its supplemental briefing, New Wood contends that implying new terms into the LLC Agreement outside the scope of the implied covenant would be contrary to Delaware law because doing so effectively would re-write the parties' agreement.[26]

8. Baldwin contends New Wood's motion must be denied because the allegations in the Counterclaim sufficiently put New Wood on notice of the claims against it.[27] Baldwin argues the Counterclaim and Affirmative Defenses contain well-pleaded allegations that New Wood: (i) purposefully delayed any payments to him, (ii) forced him to incur needless attorneys' fees and expenses, and (iii) induced

---

[21] Pl.'s Mot. at 9.
[22] *Id.* at 9-10.
[23] *Id.* at 10.
[24] *Id.*
[25] *Id.* at 11.
[26] Pl.'s Suppl. Br. at 5-6.
[27] Def.'s Resp. at 18.

8

ACR to enter into the Written Consent in bad faith so that it could improperly claw-back the advanced funds.[28] Baldwin maintains the implied covenant of good faith and fair dealing properly is invoked in this case because (i) there is a gap in Section 8.2 as to whether the indemnification decision must be made in good faith, and (ii) New Wood's refusal to indemnify Baldwin was unreasonable conduct that prevented him from receiving the fruits of his bargain.[29] In his supplemental briefing, Baldwin also argues the Court should invoke the doctrine of necessary implication to imply a good faith requirement into Section 8.2 of the LLC Agreement.[30] Without this implied term, Baldwin asserts New Wood unilaterally could defeat the indemnification rights for which Baldwin bargained.[31] According to Baldwin, the parties would have included an explicit term requiring good faith had it not been so obvious that the parties intended for Section 8.2 to have such a limitation.[32]

## ANALYSIS

9.      A party may move for judgment on the pleadings under Superior Court Civil Rule 12(c).[33] In resolving such a motion, the Court accepts the truth of all well-pleaded facts and draws all reasonable factual inferences in favor of the non-

---

[28] *Id.* at 15.
[29] *Id.* at 19.
[30] Def.'s Suppl. Br. at 4.
[31] *Id.* at 4-5.
[32] *Id.* at 4.
[33] *See* Del. Super. Ct. Civ. R. 12(c).

moving party.[34] The Court "accords the party opposing a [Rule] 12(c) motion the same benefits as a party defending" a motion to dismiss under Rule 12(b)(6).[35] Accordingly, this Court will grant a motion for judgment on the pleadings only if, after drawing all reasonable inferences in favor of the non-moving party, there is no material fact in dispute and the moving party is entitled to judgment as a matter of law.[36]

## A. Baldwin must repay the amounts advanced to him but is not required to repay previous indemnification payments.

10.     Baldwin must repay the $541,664.99 that New Wood advanced to him, as expressly required by the LLC Agreement and his written promise to repay. "In interpreting contract language, clear and unambiguous terms are interpreted according to their ordinary and usual meaning."[37] The parties agreed in Section 8.2 of the LLC Agreement that Baldwin would not be entitled to indemnification unless

---

[34] *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, 2021 WL 347015, at *6 (Del. Super. Ct. Feb. 2, 2021) (citing *Indian Harbor Ins. Co. v. SharkNinja Operating LLC*, 2020 WL 6795965, at *2 (Del. Super. Ct. Nov. 19, 2020)).

[35] *Catlin Specialty Ins. Co. v. CBL & Assocs. Props., Inc.*, 2017 WL 4784432, at *6 (Del. Super. Sept. 20, 2017) (citing *Desert Equities*, 624 A.2d ay 1205); *see SharkNinja*, 2020 WL 6795965, at *2 ("[T]he standard for motion for judgment on the pleadings is almost identical to the standard for a motion to dismiss under Rule 12(b)(6)." (internal quotation marks omitted)); *see also Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 WL 7803923, at *1-2 (Del. Super. Nov. 1, 2017) (importing the same liberal construction into review of motion for "partial" judgment on the pleadings).

[36] *V&M Areospace LLC v. V&M Co.*, 2019 WL 3238920, at *3 (Del. Super. July 18, 2019) (citations omitted).

[37] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006); *Rhone–Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992); *accord Allied Capital Corp. v. GC–Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).

a majority of New Woods' unitholders determined that, "with respect to the matter for which such Person seeks indemnification, such Person acted in good faith and in a manner that he or she reasonably believed to be in or not opposed to the best interests of the Company."[38] Further, under Section 8.3 of the LLC Agreement, Baldwin signed a written undertaking promising to repay all amounts advanced to him if it ultimately was determined that he was not entitled to indemnification.

11. Section 8.2's good faith prerequisite to managers' indemnification rights may be unusual, but Baldwin has not cited any authority suggesting it is unenforceable. To the contrary, Delaware's Limited Liability Company Act gives maximum effect to the principles of freedom of contract and contractual enforceability.[39] In fact, one of the advantages to selecting a limited liability company as a form of entity is the parties' freedom to shape their relationship through contract.[40] Baldwin does not dispute that he signed the written undertaking to repay or that a majority of New Woods' unitholders ultimately made a determination that he was not entitled to indemnification in the Delaware Plenary Action. Neither party disputes that Section 8.2's language is clear and unambiguous, and the parties agree on the precise amounts advanced to Baldwin. Even drawing all reasonable inferences in Baldwin's favor, there is no material dispute that

---

[38] Pl.'s Mot. at 4.
[39] 6 *Del. C.* § 18-110(b).
[40] *Haley v. Talcott*, 864 A.2d 86, 88 (Del. Ch. 2004).

11

Baldwin contractually was required to repay the advanced amounts if it later was determined he was not entitled to indemnification.[41] Baldwin therefore must reimburse New Wood the $541,664.99 advanced to him.

12.     For two reasons, however, the same conclusion does not apply to amounts New Wood previously paid as indemnification for the fees Baldwin incurred in the Advancement Action. First, the written undertaking only applies to the funds advanced in the Delaware Plenary Action.[42] Accordingly, the undertaking does not obligate Baldwin to repay "fees on fees," since such sums constitute indemnification, rather than advancement. Second, Sections 8.2 and 8.3 do not authorize claw-back of amounts paid out for indemnification, even if New Wood paid these amounts before any "good faith or best interests" determination. Rather, Sections 8.2 and 8.3 establish the standard that governs when indemnification must be paid. In short, Baldwin is not contractually obliged to reimburse New Wood the $325,546.04 paid as indemnification for the Advancement Action.[43]

---

[41] As explained below, Baldwin's affirmative defenses and counterclaim do not create disputed issues of material fact.

[42] Pl.'s Am. Compl. at ¶ 16.

[43] New Wood correctly points out that Baldwin did not raise this distinction between advancement and indemnification in his opposition to New Wood's motion. The Court raised the point *sua sponte* at oral argument. Baldwin, however, cannot truly be said to have waived the argument, since he never implicitly or expressly conceded the indemnified funds should be repaid. In my view, the Court was compelled by principles of comity to raise the issue of whether the "fees on fees" the Court of Chancery ordered New Wood to pay should be considered differently from the advancement ordered by the Court and governed by the undertaking. For the reasons explained above, I believe the amounts must be treated differently.

12

**B. Baldwin's affirmative defenses and Counterclaim do not raise disputed issues of material fact that preclude entry of judgment on the pleadings.**

13. Baldwin's Counterclaim and affirmative defenses do not preclude judgment on the pleadings because Baldwin has not pleaded a cognizable counterclaim. Baldwin's argument fails at the outset because it is undisputed that New Wood did not make the indemnity decision; rather, the majority of New Woods' unitholders made the decision, as provided for in the LLC Agreement. New Wood cannot be said to have breached the implied covenant of good faith and fair dealing when the challenged decision was made by a non-party to this action.

14. Moreover, even if Baldwin could avoid the fact that New Wood did not make the indemnity decision, the Counterclaim fails for other reasons as well. The implied covenant of good faith and fair dealing attaches to all contracts and exists to fill unanticipated contractual gaps.[44] To state a claim for breach of the implied covenant, a claimant must allege: (1) a specific implied contractual obligation; (2) a breach of that obligation; and (3) resulting damage.[45] The implied covenant "involves a cautious enterprise" in which a court infers contractual terms to fill gaps or developments that neither party anticipated.[46] A contracting party may not use

---

[44] *See Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017).
[45] *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *11 (Del. Super. Aug. 7, 2019) (quotation marks and citations omitted).
[46] *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010) (quotation marks omitted).

13

the implied covenant to alter a contract's express terms.[47] Put differently, Delaware courts will use the implied covenant to fill gaps only when a contract truly is silent on the disputed issue.[48] As a result, where the express terms of an agreement govern a particular matter, an implied covenant claim regarding that matter is not viable and must be dismissed.[49]

15. Baldwin argues New Wood breached the implied covenant of good faith and fair dealing because New Wood acted in bad faith when it determined he was not entitled to indemnification.[50] Alternatively, Baldwin asserts this Court should invoke the doctrine of necessary implication to imply into the LLC Agreement a term that required New Wood to make an indemnification determination in good faith.[51] Baldwin's implied covenant claim fails because it would create a free-floating obligation of good faith that is not tethered to any unanticipated gap in the LLC Agreement.[52] Instead, the implied covenant Baldwin advances directly would contradict the express language in the LLC Agreement, which conditions indemnification on a determination that a manager acted in good

---

[47] *See Brightstar Corp.*, 2019 WL 3714917, at *11 (When reviewing an implied covenant claim, "the express terms of a contract must always control.") (citing *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005)).

[48] *See Brightstar Corp.*, 2019 WL 3714917, at *11; *accord Dunlap*, 878 at 441; *see also E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 443-44 (Del. 1996).

[49] *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at *9 (Del. Ch. June 8, 2018).

[50] Def.'s Resp. at 16,19-21.

[51] Def.'s Supp. Br. at 2-5.

[52] *Dunlap*, 878 A.2d at 441.

14

faith and in a manner he believed to be in the company's best interests. Baldwin asks this Court to override express contractual language to impose a free-floating duty that any indemnification determination be made in good faith; the implied covenant cannot be used in this way.

16. Baldwin's reliance on *Dieckman v. Regency GP LP*[53] is misplaced and unsupported by the pleaded facts. In *Dieckman*, a unitholder in a master limited partnership alleged the general partner made false and misleading statements in a proxy statement the general partner issued to induce unitholders to approve a conflicted transaction. The unitholder's approval of the transaction triggered the limited partnership agreement's safe harbor provision and thereby shielded the general partner from further scrutiny. The Delaware Supreme Court determined that, once the general partner elected to issue a proxy statement to take advantage of the safe harbor protection, there was an implied obligation in the agreement not to mislead the unitholders.[54] But *Dieckman* does not rescue Baldwin's bid to avoid the LLC Agreement's plain terms because the case is distinct factually and legally. First, *Dieckman* was decided in the context of a publicly traded master limited partnership in which the investors could not competitively negotiate the partnership agreement's terms and necessarily relied on the public documents and public disclosures about

---

[53] 155 A.3d 358 (Del. 2017).
[54] *Id.* at 368.

15

the entity.[55] Second, the safe harbor provision at issue was a voluntary protection the general partner attempted to utilize to immunize the merger from judicial review.[56] The Delaware Supreme Court held that, having voluntarily sought the safe harbor's protections, the implied covenant precluded the general partner from misleading the unitholders in the proxy statement or appointing conflicted members to the ostensibly independent conflicts committee.[57]

17. Here, in contrast to *Dieckman*, the LLC Agreement was a negotiated agreement of a private entity, not a publicly traded master limited partnership. And, the LLC Agreement mandates a determination that an indemnitee acted in good faith or in the company's best interests before the indemnification may be paid. Imposing an additional free-floating good faith obligation would subject every express and mandatory provision in the LLC Agreement to fact-intensive and unyielding judicial review. This is not consistent with either Delaware law or the "narrow" purposes of the implied covenant.[58] Accordingly, the Counterclaim does not create a genuine factual issue that precludes judgment on the pleadings.

18. Baldwin's argument that this Court should invoke the doctrine of necessary implication to imply a good faith term into the LLC Agreement likewise

---

[55] *Id.* at 366-67.
[56] *Id.* at 367-68.
[57] *Id.* at 367-69.
[58] *See Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888 (Del. Ch. 2009).

fails because the implied term would contradict the LLC Agreement's express language.[59] The doctrine of necessary implication permits a court to read an implied promise into a contract in order to carry out the purpose for which the promise was made or prevent one party from frustrating the other's right to receive the fruits of the contract.[60] Terms are implied not because they are reasonable but because they necessarily are involved in the contractual relationship such that the parties only failed to express them because they are too obvious to need expression. In other words, the doctrine appears to be no broader than, and arguably is synonymous with, the implied covenant. The doctrine does not apply, however, where the implied term sought would destroy, rather than carry out, the agreement's express purpose.[61]

19. In this case, for the same reasons discussed above, implying the term Baldwin's seeks would undermine Section 8.2's express and unambiguous language. It is far from "obvious" that the LLC Agreement's parties intended any process to govern the indemnification decision other than the one expressly set forth in Section 8.2. Implying some free-floating obligation of good faith into the LLC Agreement

---

[59] Although the Counterclaim does not refer to the doctrine of necessary implication, Baldwin asserted during his oral argument that the Counterclaim was both a claim for breach of the implied covenant and a claim to imply a term in the LLC Agreement. Baldwin's supplemental briefing on May 19, 2021 argues this Court should invoke the doctrine of necessary implication to imply a contractual term requiring any indemnification determination to be made in good faith. Def.'s Suppl. Br. At 4.

[60] *In re IT Group, Inc.*, 448 F.3d 661, 671 (3d Cir. 2006) (citing *Killian v. McCulloch*. 850 F.Supp. 1239, 1250-51 (E.D.Pa. 1994)).

[61] *In re IT Group, Inc.*, 448 F.3d 661, 671 (3d Cir. 2006).

would undermine, rather than carry out, the parties' intentions. The doctrine of necessary implication therefore is not applicable to this case.

## CONCLUSION

For the reasons set forth above, Plaintiff/Counterclaim-Defendant New Wood's Motion for Judgment on the Pleadings is **GRANTED** and Baldwin shall repay the $541,664.99 advanced to him.

Abigail M. LeGrow, Judge